**STATE of Iowa, Appellee,**

v.

**George C. CHURCH, Appellant.**

**No. 53541**

Supreme Court of Iowa.

July 24, 1969.

John W. Kellogg, Missouri Valley, for appellant.

Richard C. Turner, Atty. Gen., and Larry Seckington, Asst. Atty. Gen., for appellee.

GARFIELD, Chief Justice.

Defendant Church was charged by county attorney's information, tried, and found guilty by a jury of robbery without aggravation in violation of section 711.3 Code, 1966. From sentence on the verdict he has appealed.

Three assigned errors relate to the admission of evidence and the fourth to the refusal of defendant's requested instruction bearing on his contention he was so far intoxicated at the time of the alleged robbery he was incapable of forming the requisite specific intent. We find no reversible error in any or all of these assignments.

I. William Hennigan, a traveling salesman living in Omaha, was hitchhiking on Interstate Highway 29 south of Sioux City about 4:30 on October 2, 1968. His own car had developed engine trouble in South Dakota and was left there. Three men and a girl stopped the car in which they were riding and offered him a ride. Defendant was seated on the right side of the front seat, the girl in the middle. The driver was named Newcomb. Hennigan got in the back seat behind defendant. The third man in the car aside from Hennigan was named Haas, who sat at the former's left in the rear seat.

Parts of two 6-packs of beer were on the floor of the car in front of Haas. The men other than Hennigan were drinking beer and defendant had a plastic bag which he was blowing up and inhaling glue. The car proceeded south on Interstate 29 in excess of 100 miles per hour. It was stopped at a rest area where the driver and Haas left the car. Defendant, the girl and Hennigan remained in it. The latter had become apprehensive of his companions and wanted to leave the car but was unable to do so at this stop—the car had only one door on each side.

Several miles further on the car was stopped at another rest area and the three other men got out. The driver stood by

the right door, however, preventing Hennigan from leaving.

About 5 o'clock Hennigan asked to be let out of the car at an exit on Interstate 29. As he was getting out defendant struck him, grabbed him by his shirt, was swearing and demanding Hennigan's money. In backing away from his assailant Hennigan dropped his suitcase. By then Newcomb, the driver, was out of the car and assisted defendant in holding Hennigan and robbing him of his money and the contents of his billfold. Defendant picked up the victim's suitcase, threw it in the back seat and the four drove away.

Hennigan succeeded in writing down the license number of the car, a 1967 red Chevrolet two-door with a black top. In about 15 minutes he got a ride with a motorist to the police station in Missouri Valley, north of Omaha, near Interstate 29. Hennigan gave the police the license number of the Chevrolet car and reported the robbery about 5:30.

As a witness Hennigan identified exhibits 1 through 7 as articles taken from him in the robbery. The next morning the sheriff of Harrison County, in which Missouri Valley is located, drove Hennigan to the county jail at Logan where he identified defendant as the man who robbed him. He was one of three men standing side by side and was dressed just as on the previous day. The witness also identified defendant in court at the trial. Later on October third Hennigan was taken to Sioux City where he identified the red and black Chevrolet car in which he had been a passenger the previous afternoon. All this was without objection.

Other testimony will be mentioned in discussing the assigned errors.

■ II. Defendant's first assigned error is in overruling his motion to suppress and receiving testimony of State Highway Patrolman Jenkins of verbal statements made to him by defendant prior to warning the latter of his rights as allegedly required by Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706.

Jenkins testified he lived at Missouri Valley; on the evening of October 2 he received a report someone was stepping in front of cars on the Interstate; he went to the place of the reported occurrence; found defendant walking north on the highway; informed him of the report he had received; defendant told witness he was just walking north on the highway; witness asked where he was headed and had been; defendant said he had been in Omaha and was trying to get back to Sioux City; witness asked if he had come from Sioux City and was told he had; defendant said he had left friends in Omaha with whom he went there; asked what kind of a car he had been in, defendant said a '67 red Chevrolet.

At this point the patrolman advised defendant of his rights under the Miranda decision, placed him under arrest for robbery and took him to the Missouri Valley police station, called the county attorney and defendant was then taken to the county jail. Until defendant was informed of his "Miranda rights" his conversation with Jenkins was at the side of the highway, defendant had not been placed under arrest, taken into custody or otherwise deprived of freedom of action in any significant way.

Although Jenkins knew of the reported robbery in the afternoon, as a witness he insisted, in effect, he did not associate defendant with it until the latter described the car in which he had gone to Omaha and at that point he was advised of his rights. A fair inference from the patrolman's testimony is that any investigation of the robbery had not focused on defendant or reached the accusatory stage prior to the time he was duly warned of his rights against self-incrimination. We think the above evidence was properly received and there was no violation of Miranda v. Arizona, supra.

Precedents which support our holding include United States v. Thomas, 2 Cir., N.Y., 396 F.2d 310, 312–314 and citations (1968); Clark v. United States, 9 Cir., Wash., 400 F.2d 83, and citations (1969); State v. Mitchell, Minn., 163 N.W.2d 310, 315–316 and citations n.3 (1969).

■ III.  The second and third assigned errors are closely related and we consider them together.  The second complains of receipt of testimony of Sioux City police detective Stewart that on October 3 or 4 he saw exhibits 1 through 7 over a heat pipe in the basement of a bowling alley in the city.  He identified them as having been removed from the place where he first saw them · and turned them over to Sergeant Hanson for safe-keeping.  The exhibits were the same as those identified without objection by Hennigan, the previous witness, as having been taken from him.

Officer Stewart also testified over defendant's general objection of incompetent, irrelevant and immaterial that Newcomb took him to the place where the exhibits were found.  As stated, the man who drove the red Chevrolet car was named Newcomb.  It may fairly be inferred it was the same Newcomb who led Officer Stewart to the exhibits.

Defendant's third assigned error is directed to receipt in evidence of the exhibits identified by the victim Hennigan and Officer Stewart.

Defendant's objection to Officer Stewart's testimony seems to be based on the fact Newcomb, not defendant, led him to the place where the exhibits were found and it was not shown just where they were kept between the times they were taken from Hennigan and discovered in Sioux City a day or two later.  It is suggested defendant could not have taken them there because he was arrested while attempting to return to Sioux City.

It is doubtless true defendant could not have taken the stolen articles to Sioux City.  But in this respect Stewart's testimony is favorable to defendant, not prejudicial to him.  The state was not required to show the exact whereabouts of the articles between the time they were stolen and the time they were discovered by Officer Stewart.  It was sufficient to account for them from the time of their discovery to the time of trial.

Defendant also tells us the state did not need Stewart's testimony since ownership of the articles was sufficiently shown by the witness Hennigan.  This may be conceded.  But it does not follow the officer's testimony should not have been received over the general objection made to it or that it was prejudicial to defendant.

Of course error in admission of testimony must be prejudicial to an accused to constitute ground for reversal.  State v. Wallace, 259 Iowa 765, 771, 145 N.W.2d 615, 619 and citations.  Since, as we are about to point out, we are convinced exhibits one through seven were properly received in evidence, we hold the ruling on defendant's objection to Officer Stewart's testimony was not prejudicial to defendant and his second assigned error is therefore without merit.

■ The third assigned error calls for little discussion.  Defendant's counsel conceded on submission of the appeal and, in effect, in his printed brief and argument that if exhibits 1 to 7 had been offered in evidence at the close of Hennigan's testimony they would have been properly received.  But we were told that since the exhibits were not offered until after Officer Stewart, the next witness, testified briefly concerning them, they were not then admissible.  By what logic it can be claimed the officer's testimony rendered the exhibits inadmissible we cannot understand.  We find the third assigned error wholly without merit.

■ IV.  As stated at the outset, the remaining assigned error is the court's refusal to submit to the jury defendant's contention he was so far intoxicated at the

time of the robbery he was incapable of forming the requisite specific intent to commit the crime. Defendant requested an instruction on the matter which was sufficient to alert the court to his contention. Such an instruction was refused evidently because the court felt the evidence was not sufficient to warrant submitting the issue to the jury. This is the question the assigned error presents.

■ The law governing the point is not in dispute. Mere voluntary intoxication is not a defense to crime. Where, however, a specific intent is a necessary element of the crime charged and defendant is shown to be so far intoxicated as to be incapable of forming the requisite specific intent a verdict of guilty is not justified. Defendant concedes this is an affirmative defense with the burden resting on him to prove it by a preponderance of the evidence. See State v. Estrella, 257 Iowa 462, 470, 133 N.W.2d 97, 102 and citations; State v. Wharff, 257 Iowa 871, 876, 134 N.W.2d 922, 925, and citations; State v. Gillespie, Iowa, 163 N.W.2d 922, 926. Defendant cites State v. Yates, 132 Iowa 475, 477–478, 109 N.W. 1005 on the point. See also State v. Hunley, Iowa, 167 N.W.2d 645, 649.

■ Defendant did not testify and no evidence was offered in his behalf. Defendant argues, however, the defense was sufficiently established for submission to the jury by the state's witness Hennigan and a part of two answers by Patrolman Jenkins. We are not persuadad a jury question on this defense was thus made.

Hennigan was a passenger in the car only a half hour. As stated in Division I, supra, when he got in the car parts of two 6-packs of beer were on the floor in front of the other rear seat occupant. Eight or nine cans were full when Hennigan first noticed them. No other beer was seen in the car. The three men other than the victim were drinking beer and defendant was inhaling glue from a plastic bag probably a dozen times. He asked Hennigan if he wanted to try glue sniffing but the latter declined. Once defendant turned toward the witness and said "I know you are thinking we are going to rob or roll you." Defendant drank probably two or three cans of beer while Hennigan was in the car. There is no evidence anyone drank anything but beer.

On cross-examination Hennigan also testified he had seen intoxicated people and "I do not know if these young people were intoxicated or not. I would have to see them walking around possibly before I could tell." Defendant drank beer throughout the entire trip. To the question "If any of these young people were intoxicated were they all about the same degree of hilarity or talkativeness?" Hennigan replied "Defendant was obviously more active and noisier and either under the influence of alcohol or glue as compared to the other two men."

On redirect examination Hennigan said he did not see defendant walk or observe he had any difficulty in walking. He did not appear to have lost his ability to maneuver or handle himself because of drinking or glue sniffing.

Patrolman Jenkins testified that when he talked to defendant about 10 P.M. (five hours after the robbery) he appeared to be a little glassy-eyed, otherwise normal; there was no slurring of speech or odor of beer.

We have set out quite fully the testimony bearing on the defense of intoxication. The answer of Hennigan which comes closest to showing defendant was intoxicated at the time of the robbery was in response to the question which assumed one or more of "these young people were intoxicated" and the answer was qualified by comparing defendant to the other two men, one of whom was driving the car. In view of the fact Hennigan did not testify defendant was even intoxicated and considering the entire record, we are not justified in holding the jury could properly find he was so far intoxicated at the time of the robbery as to be incapable of forming the specific intent to commit the crime. We

therefore overrule defendant's fourth assigned error.

Among decisions bearing on this assigned error are State v. Walker, 200 Iowa 341, 204 N.W. 215; State v. Linzmeyer, 248 Iowa 31, 34, 79 N.W.2d 206, 207–208; State v. Estrella, supra, 257 Iowa 462, 470, 133 N.W.2d 97, 102.

As to the matter of glue sniffing, there is no evidence of the effect it has upon those who indulge in it, much less that it causes intoxication. Nor is it suggested the matter is of common and general knowledge so judicial notice may properly be taken of it.

Since we find no error among those assigned and argued, the contention that their cumulative effect was such as to deprive defendant of a fair trial is found to be without merit. We think defendant was accorded a fair trial.

Affirmed.

All Justices concur except BECKER, J., who concurs in the result.