STATE of Iowa, Appellee,

v.

John Arthur STREIT, Appellant.

No. 54503.

Supreme Court of Iowa.

March 28, 1973.

Stephen M. Peterson, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Ray Sullins, Asst. Atty. Gen., and Wallace Reed, Asst. Black Hawk County Atty., for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and HARRIS, JJ.

LeGRAND, Justice.

Defendant was charged under section 707.2, The Code, 1966, with having set fire to his father's restaurant in Waterloo, Iowa. A jury returned a verdict of guilty; defendant appeals, claiming he was entitled to a directed verdict on a motion made at the end of the State's evidence and renewed after both sides had rested. We reverse and remand the case with directions that a judgment of not guilty be entered.

Although defendant has alleged several errors, we consider only the one which asserts his right to a directed verdict since our ruling on that issue disposes of the case.

The State's evidence was entirely circumstantial. We have said such evidence may be equal to, and sometimes more reliable than, direct evidence. We have also held a conviction may rest entirely on circumstantial evidence. When it does, however, it must pass the test of being not only consistent with defendant's guilt but inconsistent with any rational hypothesis of innocence. State v. Stamper, 195 N.W.2d 110, 111 (Iowa 1972); State v. Patman, 189 N.W.2d 620, 622 (Iowa 1971); State v. Daves, 259 Iowa 584, 586, 144 N.W.2d 879, 881 (1966); State v. Estrella, 257 Iowa 462, 467, 133 N.W.2d 97, 100 (1965); State v. Whisler, 231 Iowa 1216, 1219, 3 N.W.2d 525, 530 (1942).

With these rules in mind, we review the evidence upon which the conviction rests. Since defendant is challenging the sufficiency of the testimony to warrant submission of the case to the jury, we consider only that evidence which tends to establish guilt, viewing it as favorably as possible for the State. State v. Hinsey, 200 N.W.2d 810, 813 (Iowa 1972); State v. Youngbear, 203 N.W.2d 274, 279 (Iowa 1972).

The State's theory rested on the premise defendant had stolen money from his father's restaurant and had then set fire to the property to conceal the theft. We find ample circumstantial evidence in the record to justify a conclusion defendant was guilty of larceny. We find more than enough evidence, too, to permit a finding that *someone* feloniously burned the property.

This brings us to the sole issue on this appeal: Does the evidence make out a jury question on defendant's involvement in the crime? We say no, and we recite all the evidence favorable to the State to demonstrate why we conclude defendant was entitled to a directed verdict.

Defendant, unemployed and impecunious, helped his father from time to time in the

operation of a restaurant known as Jack's Cafe. He was not paid a regular salary but his father "helped him out a little bit" to keep him going. There were only two keys to the restaurant; defendant had one and his father the other. On the night of the fire defendant and his father left the building together at 9:00 P.M. Both front and back doors were locked, as was a basement entryway. Defendant stayed with his father until 11:00 o'clock that evening. The two then went their separate ways.

Before leaving the restaurant defendant's father, as was his custom, put approximately $90.00 in bills, plus some change, in a money bag as "starting money" for the next day's business. He secreted this in a cabinet behind the linen supply. Defendant knew of this custom and knew where the hiding place was.

From 11:00 P.M. to approximately 1:00 A.M. defendant's whereabouts are unaccounted for. At approximately 1:00 o'clock he appeared in the Old Town Inn, a restaurant and bar near Jack's Cafe, and attempted to borrow money from a bartender there. He was unsuccessful. About 1:30 A.M. he left this establishment and returned twenty minutes later, just as the employees were getting ready to close. Upon his return—about 1:50 A.M.—defendant had a rather large quantity of money, which he displayed to several employees. He wanted a drink, and announced he now had money to pay for it. He left the Old Town Inn at 2:15 A.M. and within a few minutes appeared at Jake's Steak House, another restaurant-tavern in Waterloo. He stayed for approximately twenty minutes during which time he paid off a debt of $45.00 to Robert Bird, an employee at Jake's Steak House. Again witnesses testified he had a substantial amount of money, although no one is able to estimate how much. At 2:35 A.M. he left Jake's Steak House, turning up next at Hummell's, an eating establishment just one block from his father's restaurant. It was then 2:45 A.M. and Hummell's is a "five or ten minute drive" from Jake's

Steak House. At Hummell's he lost $23.00 to LaVern Schares matching coins. At 3:00 o'clock Mr. Schares left. Defendant was then just beginning to eat a sandwich he had ordered.

The alarm for the fire at Jack's Cafe was turned in at 3:05 A.M. The fire department arrived at 3:07 and the fire was extinguished almost immediately. When the firemen arrived, the restaurant was still locked, both front and back, and it was necessary to break a window in order to gain entry to fight the blaze.

Both Eugene D. Fortune, the city fire marshal, and Robert Smith, the state fire marshal, testified the fire could not have burned more than ten minutes from the moment it was started until the time it was extinguished. They based this upon the type of fire, the negligible damage done, and the fact that the gas jets on the stove were open which would have caused an explosion if the fire had burned for any length of time. These same witnesses—the city and state fire marshals—testified that in their opinion the fire had been started by lighting a match or a cigarette lighter to some guest checks. There was no evidence a delayed timing mechanism had been used by which a fire could have been ignited sometime after it had been actually set.

Captain Fortune testified concerning factors important in determining how long the fire had burned. He then expressed this opinion:

"Q. That would mean that the fire was started sometime between 2:55 and 3:05 on that morning? A. This would be the approximate time."

On the same subject the state fire marshal testified as follows:

"Q. Based on your experience and the timing that you have done on other fires, what's your best estimate on how long these fires had been burning? A. I would say that in the area of these

fires it would be possibly five minutes, ten minutes, somewhere in this area. Any closer than that I couldn't say.

"Q. Then that would be from when to when? A. That would be from the time that the fire was ignited or lit until the fire department put it out and that's the time it burns."

At another place he testified:

"I would say again [the fire burned] five to ten minutes. There's a variance in there. I know of no one that can put down a specific time in this."

If, as the State's expert witnesses say, this fire was set between 2:55 A.M. and 3:05 A.M., the State has failed to establish a circumstantial case against defendant. His time is fully accounted for during that period, not by his witnesses but by the State's witnesses.

There is a strong circumstantial case against defendant on the theft of the money but, if defendant is guilty of that offense, it must have occurred before 1:50 A.M. That is the time defendant showed sudden affluence and began spending money freely. This was more than an hour before the setting of the fire.

 The State has the burden of proving its circumstantial case. Yet it is the *State's* witnesses who provide defendant with a time table making it impossible for him to have started a fire at his father's place of business at the time this one was set. We do not have here the option of choosing from several versions that testimony which is favorable to the State. *All* the evidence places defendant somewhere else at the time he must have been at Jack's Cafe if he committed this crime.

There are several bizarre circumstances about this case. There is the nagging question of who did start the fire if defendant didn't. Then, too, the long and detailed testimony about a fire at defendant's home that same night (which went in without objection) is an almost unbelievable coincidence.

We can speculate on these things; but a conviction must rest on more than that. We are limited to what the *evidence* shows. On this record, it shows—from the State's witnesses—defendant wasn't there when the crime was committed.

It is uncontroverted that from 2:45 to 3:00 A.M. defendant was in Hummell's with LaVern Schares. At 3:00 A.M. he was just starting to eat a sandwich. No one testifies he left suddenly or hurriedly. To fit into this jigsaw puzzle, defendant would have had to leave Hummell's after 3:00 o'clock, rush to Jack's Cafe, start a fire in time to have an alarm turned in at 3:05 A.M. Such a sequence of events is not only lacking support in the record, but the time element makes it virtually impossible to have occurred.

The statement made in State v. Daves, supra, 259 Iowa at 591, 144 N.W.2d at 884, is applicable here:

"The evidence is circumstantial. Can we say it is sufficient to allow the jury to find every rational hypothesis of innocence has been negatived as required by the cases?"

We believe the answer must be in the negative and that defendant's motion for a directed verdict should have been sustained.

We therefore reverse the judgment of the trial court and remand with instructions that a judgment of not guilty be entered.

Reversed and remanded with instructions.